IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JOSEPH JOHN HELLERUDE,

                Plaintiff,                          OPINION AND ORDER

    v.

                                                21-cv-016-wmc

KILOLO KIJAKAZI, Acting Commissioner
for Social Security,

                Defendant.

Pursuant to 42 U.S.C. § 405(g), plaintiff Joseph John Hellerude seeks judicial review of the Social Security Commissioner's final determination upholding a finding that he was not disabled. On appeal to this court, plaintiff maintains that Administrative Law Judge ("ALJ") Ahavaha Pyrtel erred in two respects: (1) assessing the persuasiveness of medical opinions and (2) finding that Hellerude could engage in light work without adequate consideration of his subjective symptoms and pain and obesity. In addition to these challenges on the merits, plaintiff also contends that the Acting Commissioner holds his office on a constitutionally illicit basis, relying on the United States Supreme Court's relatively recent decision considering the authority of the Consumer Financial Protection Bureau's Director in *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020). Because the court agrees with plaintiff that the ALJ's treatment of the opinions of the consultative psychological examiner was flawed, the court will reverse the Commissioner's denial of benefits and remand for further proceedings consistent with this opinion.

## BACKGROUND[1]

### A. Overview

Plaintiff Joseph John Hellerude has at least a high school education, is able to communicate in English, and has past work experience as an industrial cleaner, dairy product helper, welder, welding supervisor, and a composite position, consisting of pool servicer and construction worker. Hellerude has not engaged in substantial gainful activity since April 26, 2019, the same date as his alleged onset disability date. Hellerude applied for social security disability benefits and social security supplemental income also on April 26, 2019. He has a date last insured of December 31, 2024.

With a birth date of March 14, 1967, Hellerude was 52 years old on the alleged disability onset date, defining him as an individual closing approaching advanced age. 20 C.F.R. § 404.1563. Hellerude claimed disability based on the following conditions: "heart attack, brain function, memory, cognitive function, problem solving, bipolar." (AR 78.)

### B. ALJ Decision

ALJ Pyrtel held a telephonic hearing on September 9, 2020, at which Hellerude appeared personally and through his counsel. On September 30, 2020, the ALJ issued an opinion finding that Hellerude had not been under a disability within the meaning of the Social Security Act from his alleged disability onset date through the date of the decision.

The ALJ first determined that Hellerude had the following severe impairments: "degenerative disc disease; hypertension; acute myocardial infarction; ischemic heart

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #12.

disease; diseases of the circulatory system; sleep related breathing disorder; neurocognitive disorder; and depressive, bipolar disorder and related disorders." (AR 25.) The ALJ also considered whether Hellerude's "documented longitudinal history of obesity, with a height of approximately 70 inches, weight ranging from about 216 to 235 pounds, and a Body Mass Index (BMI) as high as 33.7 kg/m2" constituted a severe impairment, concluding that it did not. (*Id*.) The ALJ explained that "the record evidence does no demonstrate more than a minimal limitation in the ability to perform basic work activities resulting from claimant's obesity." (*Id.*) As plaintiff points out, this is the only reference to Hellerude being obese in the decision.

Next, the ALJ considered whether Hellerude's impairments or combination of impairments met or medically equaled various mental impairment Listings, concluding that they did not. (AR 25-28.) Hellerude does not challenge the ALJ's findings with respect to his physical limitations, but the ALJ's conclusions as to the Paragraph B categories is material to one of his challenges on appeal. The ALJ concluded that Hellerude had moderate limitations with respect to understanding, remembering or applying information and concentrating, persisting or maintaining pace and mild limitations with respect to interacting with others and adapting or managing oneself. (AR 27-28.) In making these findings, the ALJ relied at least in part of the consultative examination by Dr. Weber, discussed more below. The ALJ also noted medical records, mainly concerning his heart condition, in which Hellerude was noted to have "normal" cognition, memory and judgment. (*Id.*)

At step four, the ALJ further found that even with his impairments, Hellerude had the residual functional capacity ("RFC") to perform light work, with the following additional exertional restrictions: limited to "lifting 20 pounds occasionally and 10 pounds frequently; carrying 20 pounds occasionally and 10 pounds frequently; sitting for 6 hours, standing for 6 hours; push/pull as much as can lift/carry"; "can climb ramps and stairs occasionally, climb ladders, ropes, or scaffolds occasionally, stoop frequently, kneel frequently, crouch frequently, crawl frequently"; "can work at unprotected heights occasionally, moving mechanical parts occasionally, in humidity and wetness occasionally, in vibration occasionally." (AR 29.) Moreover, the ALJ included the following nonexertional restriction: "limited to perform simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work)." (*Id.*)

After setting forth the standard under SSR 16-3p, the ALJ described plaintiff's testimony about the extent of his health issues including his testimony that he has suffered three heart attacks and experiences chest pain, particularly with activity. Specifically, Hellerude explained that he experiences chest pain when walking up a small hill to retrieve his mail or when walking too fast on a flat surface; still, he also testified that he is independent in his self-care and can perform light household chores, albeit with breaks. Hellerude further explained that he flat-lined during his second heart attack, causing lack of oxygen to his brain, and, subsequently, he noticed "difficulty with concentration, cognitive function, and being able to learn new things," and experienced "memory problems, needing reminders and lists." (AR 29.) Hellerude also testified that he was unable to perform work in late 2019 because it was either too physical taxing or required

4

him to work at too fast of a pace. With respect to his mental health issues, in particular his bipolar disorder, Hellerude explained that he stopped seeing a psychiatrist because he lost his insurance and, at the time of the hearing, was on a waiting list to be seen.

The ALJ then reviewed the medical record, including records reflecting a "long-standing history of coronary artery disease, hypertension and hyperlipidemia." (AR 31.) The ALJ noted various cardiac catheterizations and placements of stent, but also noted that since his third heart attack in August 2019, while plaintiff has continued to complain of chest pain and shortness of breath, he has had "regular rhythm and normal heart sounds, pulses were strong and palpable, capillary refill was less than three seconds, and there was no edema," among other normal results. (AR 31-32.) Moreover, during the medical consultative examination in July 2019, Hellerude did not have any shortness of breath while at rest, had no edema and his pulses were normal, consistent with other recent medical records. (AR 32.)[2] With respect to his obstructive sleep apnea, the ALJ noted that Hellerude was not compliant with his use of his CPAP machine, but that he reported "getting better sleep" as a result of a combination of medication. (*Id.*) Based on this review of the records, the ALJ concluded that Hellerude was capable of light work with the additional exertional restrictions indicated above.

The ALJ also reviewed the records concerning Hellerude's mental limitations. She noted Hellerude's complaints about mental processing, memory and cognitive disfunction since his second heart attack and also noted that plaintiff has a history of bipolar disorder.

---

[2] The ALJ also discussed the records concerning degenerative disc disease, but this is not a focus of Hellerude's appeal, so the court declines to set forth these details.

Next, the ALJ reviewed the results of the consultative examination conducted in July 2019 by Dr. Weber. During the exam, Hellerude was described as "cooperative and alert" with "no unusual mannerisms or gestures," nor "overt psychomotor agitation," and that his affect was "of a euthymic quality and of normal intensity and range." (AR 32.) Hellerude was further described as being "able to maintain a generally adequate stream of mental activity" and his "speech was normal and not tangential, circumstantial or illogical." (AR 33.) Nonetheless, Dr. Weber found based on the Wechsler Memory Scale (Fourth Edition) that his "immediate memory and recent memory were in the borderline range," although his "remote memory was generally adequate." (*Id.*) The ALJ further reviewed medical records, largely dealing with physical ailments, to conclude that "[h]e was alert and oriented with a normal speech pattern, judgment, thought content, cognition and memory." (*Id.*) Based on this, the ALJ concluded that Hellerude is "limited to performing simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work)." (*Id.*)

The ALJ then considered the opinions of various medical experts, finding the opinion of Darrell Snyder, Ph.D., the state agency psychological consultant, who reviewed Hellerude's record upon reconsideration, to be "persuasive." Dr. Snyder concluded that Hellerude could remember two to three step instructions and could complete tasks of two to three steps but would have difficulty with complex instructions and tasks. (AR 33-34.) The ALJ concluded that these findings were consistent with the findings of the consultative examination and were consistent with the evidence of the record.[3]

---

[3] The ALJ also determined that the initial review conducted by the state agency psychological

6

Despite these findings, the ALJ found that the opinions of the consultative examiner, Dr. Weber, were "not persuasive." (AR 35.) Specifically, the ALJ rejected Dr. Weber's findings of marked limitations with respect to understanding, remembering and applying information and interacting effectively with others. In rejecting these findings, the ALJ relied on Dr. Weber's observations that Hellerude was "well-groomed," "cooperative and alert," his affect was "of a euthymic quality and of normal intensity and range," he was "able to maintain a generally adequate stream of mental activity," and his "speech was normal and not tangential, circumstantial or illogical." (*Id.*) The ALJ acknowledged Weber's findings that Hellerude's "immediate memory and recent memory were in the borderline range," but rejected these findings based on the fact that he had "no problem following the conversation during the assessment and had an appropriate degree of insight," coupled with other medical record notes indicating that his mood, behavior, eye contact, speech pattern, judgment, thought content, cognition and memory were all "normal." (*Id.*) As such, the ALJ concluded that Hellerude was "not as limited as opined." (*Id.*)[4]

With the assistance of the vocational expert, the ALJ concluded that Hellerude could not perform his past relevant work in light of his RFC, but determined that there

---

consultant Susan Donahoo, Psy.D. was "not persuasive," because her finding that Hellerude would "do best in jobs that do not require frequent public contact" was not supported by the record, rejecting any limitations in the areas of interacting with others or adapting and managing oneself. (AR 35.)

[4] The ALJ also considered the opinions of the state agency medical consultant upon reconsideration, finding Dr. Nimmagadda's opinions persuasive, but concluded that the opinion of the consultative medical examiner Dr. Hammel's opinions and those offered by Dr. Pat Chan in his initial review were "not persuasive." (AR 34, 36.) The court declines to review these findings since they are not material to plaintiff's challenges on appeal.

were jobs in sufficient numbers in the national economy that he could perform, including office helper, inspector, and cashier. As such, the ALJ concluded that Hellerude was not under a disability from April 26, 2019, through the date of the decision. This appeal followed.

OPINION

The standard by which federal courts review a final decision by the Commissioner of Social Security is now well-settled: findings of fact are "conclusive," so long as they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Moreover, provided the Commissioner's findings under § 405(g) are supported by this kind of "substantial evidence," this court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Finally, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). At the same time, courts must conduct a "critical review of the evidence," *id.*, ensuring that the ALJ has provided "a logical bridge" between findings of fact and conclusions of law. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

As described above, plaintiff raises two core challenges, both with several sub-arguments. The court addresses each in turn.[5]

---

[5] As noted above, plaintiff also raises a constitutional challenge, which the court need not reach in

8

## I. Treatment of Psychological Opinion Testimony

With respect to the ALJ's treatment of psychological opinion testimony, plaintiff offers two objections.  *First*, plaintiff argues that the ALJ erred in failing to evaluate adequately the consistency and supportability of the consultative examiner Dr. Weber's opinion that Hellerude had marked limitations in understanding, remembering and applying information and interacting effectively with others.  Since Hellerude's application was submitted after March 27, 2017, the medical opinion evidence is evaluated under 20 C.F.R. § 404.1520c, which focuses on the supportability and consistency of the opinion. Specifically, plaintiff argues that the ALJ failed to provide an adequate explanation of the record evidence to support his conclusion that Weber's findings "were not entirely consistent with the evidence of record."  (AR 34.)  The ALJ pointed to Weber's observations about Hellerude's level of grooming, cooperation, affect, speech and orientation, but these findings have little if any relevance for determining whether he was limited in understanding, remembering and applying information, although the court credits that these findings could be inconsistent with Weber's conclusion that Hellerude had marked limitations in interacting effectively with others.

The ALJ also pointed to other medical notes, indicating that Hellerude was "alert and oriented with normal speech pattern, judgment, thought content, cognition and memory."  (*Id.* (citing 1F/4; 3F/6; 5F/6, 11; 7F/6; 9F/18).)  These records, however, either do not provide any support for the ALJ's representation that the record reflects "normal"

---

light of its decision to remand on the merits, but, regardless, fails for the reasons provided in *Schwechel v. Kijakazi*, No. 20-CV-700-WMC, 2022 WL 135022, at *5 (W.D. Wis. Jan. 14, 2022).

9

behavior, or, more critically, do not touch on Hellerude's memory at all. (*See* AR 367 (4/19/19 annual appointment with PCP in which she inquires about his bipolar disorder but makes no mental health findings; AR 423 (7/20/19 report of consultative medical examiner in which she opined that "I do think that his cognitive ability as well as psychiatric ability will limit his gainful employment" and that he has "limits in mentation"); AR 444 (8/28/19 hospital visit due to chest pain, in which cardiologist describes him as "alert orient x3 fully conversant" and "normal mood and affect" but makes no observations about his memory); AR 449 (same); AR 596 (10/15/19 ER visit for chest pain, in which doctor notes "normal mood and affect" but makes no observations about memory).) The only record that discusses plaintiff's memory or cognition is a February 1, 2020, ER visit for insomnia, in which the medical note reflects that Hellerude "has a normal mood and affect. His speech pattern is normal. Judgment and thought content normal. Cognition and memory are normal." (AR 696.) The court is hard-pressed to credit this limited record as a basis for finding Dr. Weber's ultimate conclusion about Hellerude's memory is inconsistent with the medical evidence as a whole.

Critically, Dr. Weber engaged in testing specific to Hellerude's memory in determining that he had marked limitations with respect to understanding, remembering and applying information. While the ALJ acknowledged the testing and the results, she simply stated that "[t]he claimant is not limited as opined" (AR 35), without offering any explanation for discounting Dr. Weber's specific findings of limitations based on those memory tests. While the court agrees with the Commissioner that an examining source's opinions need not always be credited, the sources are nonetheless "<u>generally</u> given more

weight." *Balsewicz v. Berryhill*, No. 17-C-0926, 2018 WL 2290714, at *10 (E.D. Wis. May 18, 2018). As such, the Seventh Circuit instructions that "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Bearsdley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). Here, the ALJ failed to meet this requirement by offering an inadequate basis for rejecting Dr. Weber's findings with respect to Hellerude's memory and, specifically, his finding that Hellerude had marked limitations with respect to understanding, remembering and applying information.

*Second*, plaintiff contends that the ALJ erred in finding Dr. Snyder's opinion persuasive but then failing to incorporate his limitations in the RFC and failing to explain why he rejected those precise limitations. Finding error in the ALJ's treatment of Dr. Weber's opinion, the court will comment briefly on this challenge. Dr. Snyder concluded that due to Hellerude's memory limitations, he could only remember two to three step limitations, and would have difficulty with more complex instructions. (AR 125, 142.) Moreover, with respect to his moderate limitations in concentrating, and completing tasks, Hellerude would be limited to completing tasks of two to three steps and would have increasing difficulty with more complex tasks. (AR 126, 143.) The ALJ, however, did not copy this language verbatim in crafting the RFC; instead, as described above, the ALJ concluded that Hellerude was "limited to perform simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work)." (AR 29.)

In response to this challenge, the Commissioner principally argues that any error is harmless because the jobs the VE identified have "reasoning levels," pointing to evidence outside of the record, that are consistent with a limitation of one to three step instructions. (Def.'s Opp'n (dkt. #21) 31 (citing *Surprise v. Saul*, 968 F.3d 568, 662 (7th Cir. 2020)).) It appears somewhat questionable that the court can review this evidence and argument. *See Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) ("Our review is limited also to the ALJ's rationales; we do not uphold an ALJ's decision by giving it different ground to stand upon.") (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)). Regardless, the court declines to determine fully whether this constitutes error, harmless or otherwise, and would encourage the ALJ on remand to stick more closely to the state agency psychologist's limitations, to the extent the ALJ continues to find them persuasive.

## II. Consideration of Subjective Complaints of Pain and Obesity

Plaintiff also takes issues with the ALJ's finding that plaintiff was capable of performing light work, specifically raising concerns about his ability to meet the walking requirement of that category. Plaintiff faults the ALJ for failing to adequately consider his subjective complaints of pain and obesity. In light of the court's determination that remand is required because of the ALJ's treatment of Dr. Weber's opinion, the court will briefly touch on this challenge.

As for plaintiff's complaints of pain, plaintiff testified that he experienced chest pain upon exertion, including walking up a small hill to retrieve mail and walking at a fast pace on a flat surface. The ALJ acknowledged plaintiff's complaints but concluded that he could perform light work based on (1) being independent in his self-care and ability to perform

light household chores, albeit with breaks; (2) more recent medical records, including the results of the consultative physical examination, showing test results within normal limits. (AR 31-32.) While somewhat thin, these reasons appear adequate to form a logical bridge between the ALJ's discounting somewhat plaintiff's complaints of pain and his finding that Hellerude could engage in light work. At minimum, plaintiff failed to explain why his complaints of pain with exertion would be incompatible with the walking requirement required by a light work job, which could accommodate the additional exertional limitations detailed in the RFC.

Plaintiff also faults the ALJ for her failure to adequately consider how his obesity may impact his ability to perform work. The court agrees with plaintiff that the ALJ's discussion of obesity is limited -- indeed, she only mentions it briefly in describing why she did not include it in the list of severe impairments -- but, here, too, plaintiff fails to explain or point to any support for why his obesity requires additional limitations. *See Shumaker v. Colvin*, 62 Fed. App'x 861, 867-68 (7th Cir. 2015) (concluding that any error is harmless where a claimant "does not identify any evidence in the record that suggest greater limitations from her obesity than those identified by the ALJ, and neither does she explain how her obesity exacerbated her underlying impairments"). On this record, the court is disinclined to find error with respect to the ALJ's treatment of Hellerude's complaints of physical pain or his obesity in determining that he was capable of performing light work with additional exertional restrictions.

ORDER

IT IS ORDERED that:

1) The decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying plaintiff Joseph John Hellerude's application for disability insurance benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

2) The clerk of court is directed to enter judgment in plaintiff's favor and close this case.

Entered this 27th day of June, 2022.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge